[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE PREJUDGMENT REMEDY
This case came to this court as a prejudgment remedy. The plaintiff Bartolo Hernandez seeks to attach to the value of $250,000 the interest of the defendants in real estate known as 31 1/2 Couch Street in Norwalk, Connecticut.
The court finds after having heard the evidence that there is not probable cause to sustain the validity of the plaintiff's claim pursuant to 52-278(d). The court heard the evidence and reviewed the claims. Exhibit C is the police report. The police report concluded that the plaintiff had made an unsafe use of the highway. Mr. Hernandez the plaintiff had consumed some alcoholic beverages prior to the incident. This case falls within those classes of cases commonly called dartout cases.
The court finds that the defendant was exercising due care when all of a sudden she saw a person run out and she attempted to miss the person but could not stop. The defendant's testimony was that she was going 25-30 m.p. h. and was keeping a proper lookout. That the plaintiff darted from behind a parked jeep.
The plaintiff builds their case on the reconstruction expert John C. Swanson, Jr. The expert testified concerning skid marks. He reviewed the scene approximately three months after the accident. He indicated in his testimony that the skid marks had dissipated but that he was looking at the paint markings that the police had previously put there. He answered the question
Q "So did you not measure any marks when you were out there?
A. "No sir. What I measured was the placement within the intersection between these paint markings that the police had previously put there and checked them against those measurements of the skid marks taken by the police at the scene that were referred to in their report that corresponded." CT Page 11783
Subsequent to the question and answer he further referred to the paint marks made by the police in forming his opinion.
It is clear to this court that the police put no such marks out there that evening. The officer was questioned as follows:
 Q "There has been testimony that there was red markings put at the beginning and the end of the skid mark by the Norwalk Police Department. That was the testimony the accident reconstructionist that testified previous to you. Did the Norwalk Police Department put any red markings delineating three dots.
 Q Did the Norwalk Police Department put any such marks on the highway?
A From my accident counselor?
Q Yes.
A. No counselor
THE COURT: How about orange marks?
 Officer Haggerty: That night your Honor, we were lucky to have a measuring tape.
THE COURT: Okay.
Officer Haggerty: No disrespect, sir.
 Q Did you know whether, at any time, orange marks were put down there by the Norwalk Police Department?
 A This is a high traffic corner. There has been a lot of accidents there sir. Usually orange marks are put down by traffic reconstructionists. I am not qualified to do traffic accident reconstruction sir. I did not have that capability. There might have been an accident where one did, sir. I have seen many other traffic reconstruction officers who have been to the schools and they all have the tape measures and paint have that equipment sir.
Q Was an accident reconstruction carried out by the Norwalk CT Page 11784 Police Department as far as this accident is concerned?
A No sir.
The plaintiff's testimony was that he was crossing the street and was in no rush and didn't have to walk around the driver's car. He only saw the car lights when close and was hit by the front of the car and he jumped when he saw the car. He wanted to jump out of the way of the car. The Court does not understand how he could not of seen this car proceeding down the road with its headlights on. A passenger in the car Wellesley Whittingham testified. He saw this man dart in front of the car at a time when it was too late to avoid hitting him.
The Court finds the plaintiff at least 51% responsible for his own injuries.
Accordingly, the request for a prejudgment remedy is denied.
Karazin, J.
CT Page 7988